Mr. Umeda? Yes, Your Honor. Good morning. Good morning to you. May it please the Court, Mark Umeda, for Plaintiff Diaz. We're here today on two issues which we submitted, one being whether 304 implies a private right of action. The other one is diversity jurisdiction. We are willing to submit on the diversity jurisdiction issue because if the Court finds that there's an implied private right of action under 304, the Court need not address the diversity issue. Okay. I just want to make sure I'm clear on this. You're telling us that if we find against you on the 304 question... I didn't mean that. If the Court finds for... For you on 304? Yes. Okay. But you don't want to talk to us about the question in case you lose on the 304? I'm not sure there's enough time. All right. I would prefer to discuss the 304 issue. All right. You'd like to focus your time on 304. If you don't have enough time to address diversity, you rest on your briefs. Is that where you are? Exactly. Okay. Right ahead. 304 was enacted in the wake of the accounting scandals that had happened that everybody's well aware of. After extensive discussion by Congress and after extensive discussion by the President as well about what actions need to be taken to prevent this from happening in the future, the only issue we're here to discuss today is whether or not 304 implies a private right of action. The test is pretty well settled. The Ninth Circuit, as recently as last year, has used the four court factors. Of course, the emphasis from those factors is on congressional intent. So I don't think there's any question as to what the standard is that should be applied here today. In determining congressional intent, the courts look to the text of the statute, the legislative history, as well as the legislative scheme. Now, we have submitted to the Court, and the Court is well aware of the various and numerous district court opinions that have found that there is no private right of action. The first one was the Neer opinion, which has been relied upon by almost every single district court. You have a tidal wave that you're swimming against here. The tidal wave, unfortunately, was created by me. I was counsel in the Neer opinion, and we are well aware of the numerous opinions. I'm happy to report, as we told the Court, that there has been one district court who has found in our favor. Judge Hellerstein of the Southern District of New York in the Escala case has found that there was, indeed, an implied private right of action. I think he stated, quite frankly, that it would have been a lot easier for him to rule in the same way as everybody else. We've recently submitted to the Court the D.C. Circuit's short opinion about this issue, where it stated that there was no private right of action. But the sole analysis from that is that courts are less inclined these days to imply a private right of action. So we're aware of the authority against us, but we're also aware of this Court's willingness to disagree with its sister circuits. The first factor, which I'd like to talk about and I'll talk about briefly, is the factor that asks whether a plaintiff is one of the class for whom the benefit of the statute was enacted. In determining this issue, courts look at the text of the statute itself. Here, the text of the statute reads, and this is only part of it, that the CEO and the CFO of the issuer shall reimburse the issuer when there's a restatement due to misconduct. As this Court stated in the first specific, the first factor of the court test is satisfied when there is an explicit reference to the individuals for whose benefit the statute was enacted. Here, there's an explicit reference to the individuals for whose benefit the statute was enacted, and that's the issuer. So I think the issuer cleanly fits in as one of the plaintiffs, as one of the class for whom the statute was enacted. There's also discussion in the case law about a right and a remedy, the need for both a right and a remedy. Here, I think the language shall within the statute demonstrates the right, shall reimburse the issuer. And I think as far as the remedy is concerned, it's very specific, reimbursement. But not only does it state reimbursement, it also is even more specific than that if you look at the statute. It lays out specifically what should be reimbursed. So by looking at the text, all that seems to tell me, counsel, is that Congress said when we have these kinds of mistakes, then here's who's going to pay. It says nothing about who gets to enforce that. I don't think there's any question here. I don't think it's particularly controversial is the fact that your clients are part of the class for whom the statute was enacted. The question is who's going to enforce that. Well, I think that that's a question that's best answered by looking at the text of the statute. And when you look at the text of the statute, it's not one of these sort of statutes, which of course have historically found to not imply a prior act of action, such as where it prescribes conduct. It doesn't say the CEO and CFO shall not do these sort of conduct. It doesn't have that kind of language, or it's not, you know, a criminal type statute where it says you're going to be in trouble if you do this kind of stuff. What it says is we want to protect issuers, the people who have to pay this money undeserved compensation to the CEOs and CFOs. So I think that the right was created for the issuers, and it's because of the creation of the right and the remedy for the issuers that this Court should finally imply a prior right of action. As to the second factor, the second factor concerns legislative intent. This factor is historically the most important one, but I think it's kind of subsumed into the first, second, and third factors. Courts, in determining legislative intent, look to the legislative history of these cases. I'm sorry, to the statute. Why should we look to history if we can find a clear path in the text? I agree. I think. Now, that's in preface to this question. Doesn't Section 306 explicitly provide a private right of action? Section 306 does explicitly provide a private right of action. So from that, we can conclude. Let me finish the question. Sorry. From that, we can conclude, can't we, that when Congress wants to create a private right of action, it knows how to say it. That is what the judge in the Neer case, Judge Dalziel, decided in the Neer case. And I shook my head and I apologized, but I disagree. I think that you're correct in the sense that 306 does explicitly create a private right of action, but as we've stated in our briefs, it's a very limited private right of action. 306 is an interesting issue because the analysis that was done, it should be done, is to look at the statutory scheme. And now we're kind of in prong three to look at this. I'm sorry, the third factor, to look at the statutory scheme. The statutory scheme consists of 303, 304, 306, and 804. These are 303, 306, and 804, all the ones that discuss, as 306 does, express limited private right of action, and 303 express specifically SEC sole enforcement only. So the statute itself is a little bit inconsistent. So I think the analysis that needs to be done is a comparison between 303, 306, and 304 to figure out which one's more similar, similar to the analysis that was done in Neer. Excuse me. When doing that analysis, you'll find that 304 is more like 303. 304 is similar to 306 only in the sense that the ultimate remedy ends up going to the issuer. The money that's paid because of a violation of these sections goes to the issuer. But as far as the purpose, why these sections were enacted, 303 and 304 are exactly aligned. They both are set out to follow the preamble of SOX, which is to ensure the accuracy and reliability of corporate disclosures under the securities laws. That is what 303 and 304 share in common, the purpose behind them. What 306 is, it's a technical trading violation. And 306, when you look at it in the broader context, is, in fact, not like 304. It's like 16V. It is almost a carbon copy of 16V. Why shouldn't we look at these sections and say Congress identified a subset of problems, disgorgement of profit, et cetera, and capsulized it in these four sections? And in one section, the exclusive enforcement remedy lies with the Securities and Exchange Commission. In another, there's a limited private right of action. And in this section, the one we're concerned with, nothing is set. I think that's a fair analysis. That's what happened. Nothing was set here. So in order to determine the question, the court factors bring us back to an analysis of the statutory scheme. And I think when doing the statutory scheme, it's fair to try to determine which one is more similar to 304. And as I was stating, I think 306 isn't a fair comparison to 304. 303 is. But the point I wanted to make about 306 and 16B being the actual accurate comparison is that both of these involve technical trading violations. 306 involves trades that happen during a pension fund blackout period. And 16B involves short swing trades. Both of those are very technical trading violations. And the remedy that's provided for in 306B, as Justice Hawkins, you correctly pointed out, indeed states a private right of action, a limited private right of action. That remedy is, as I stated, almost a carbon copy of the remedy that is provided for in 16B. And because of that similarity between those two sections, it distracts and takes away from any similarities between 304 and 306. I think two other issues which are worth noting. One is we did submit an additional authority today. I apologize to the court. I've already handed it to defense counsel and apologize to them for not bringing it to the court's attention earlier. That case discusses the legislative history. If the court is to look at it, if the court doesn't find that the text itself. Is this Harker? It is, indeed. It's a 1989 case. It is, indeed. When did you find it? Four or five days ago. I apologize. If we just had it earlier, we would have shared it. Well, there's a good reason to prepare for argument and to do it in segments. And we have a Rule 28J system that allows you to bring to our attention authority. I apologize. I see well to abide by it. I apologize, Your Honor. What happened is I decided that I wanted to read every single private right of action case ever enunciated by the Ninth Circuit, at least in the last 25 years, and I found it late. There's nothing I can do except apologize. I think if the court is to look at legislative history. Is there some smoking gun in here? I mean, is there some language in here that compels an answer to an act that was enacted 15 years after Harper? In Harper? Yes. I think that if the court were to look and compare. Tell me which paragraph. I want to know what sentence. Where's the smoking gun in there? Where's the magic bullet? It is. This is an act that doesn't have anything to do with Sarbanes-Oxley. No, it doesn't. And so there'd be something pretty powerful in here. Oh, I apologize. Why don't you do that in rebuttal? When you're seated back at the table, why don't you highlight the language you want to bring to our attention? You can pick it up in your rebuttal argument. Thank you. Thank you. Mr. Baum? If it pleases the court, Richard Baum, on behalf of the individual defendants, my clients are current and former officers and directors of DigiMark who have been sued in this derivative shareholders action. I want to say first that this appeal is not about the right to bring a derivative action, but solely their right to bring it in federal court. And I will remind the court, as is indicated in the record, that this plaintiff, Mr. Diaz, first filed his action in California State Court and did not include a Sarbanes-Oxley 304 cause of action. And it was only after another plaintiff shareholder filed an action in Oregon State Court and we moved to dismiss the California action, and that was granted for forum nonconvenience, and the California court advised the plaintiffs to refile in Oregon State Court, they chose to refile in federal court instead and added this Sarbanes-Oxley claim. So that's the background of how we come to be in federal court. Was Diaz the case filed in Oregon or Sheehan? Neither, Your Honor. Those were the two California cases that were consolidated. Okay. The Oregon case was called Beasley. Okay. And that is the case that was later voluntarily dismissed by the plaintiffs in that case after the Special Litigation Committee had completed its work. Okay. Clearly there's no express private cause of action under Section 304. The Neer and Kogan cases make that explicit. We have cited seven district court decisions which have held that there is no implied private cause of action under Section 304 of Sarbanes-Oxley. I'm not aware of the one case that Mr. Yamita alluded to that he says goes the other way, and I don't believe that it has been properly cited to the court in accordance with the briefing. I could be corrected on that, but I certainly don't recall ever seeing mention of New York, a southern district in New York, case. Just recently, on August 8th, the D.C. Circuit considered this issue in the Pirelli-Armstrong Tire case, and as that court said, quote, the problem is that Section 304 does not create a private right of action. And contrary to the suggestion in plaintiff's brief, which relies on 1970s-era cases, courts today rarely create implied private rights of action. In fact, courts generally deem it Congress's prerogative to make that decision, citing the Supreme Court's decision in Stonebridge, and then citing the other seven district court cases, or most of them, that have held there is no private cause of action. And that goes with the Tushross case, which I think the Court also should be aware of, which is the Supreme Court decision from 1979 that said, with respect to the court four-factor test that was established in 1975, which Mr. Yamita went through those factors, the key factor, the decisive factor, is congressional intent, and that the factors are not to be looked at evenly and equally. Here, our district court followed the three decisions of the district courts that were available to it at the time of our briefing, Neer, Cogan, and Bises. And our district court particularly found the Neer decision a thorough analysis and persuasive. And I think that if you look at the Neer decision, which was the first district court to consider this issue of whether an implied private cause of action exists, you will also find that it is thorough and persuasive. For example, and I'll be brief because this has been just mentioned today, Section 306 of Sarbanes-Oxley has an explicit cause of action, and it has a statute of limitations with respect to that cause of action. And as the Neer court said, quoting from the Tusharas Supreme Court decision, quote, when Congress wished to create a private remedy, it knew how to do so and did so expressly, close quote. Section 304 clearly and plainly does not have a private cause of action. Further substantiation for the fact that Congress did not intend a private cause of action in 304 is the Subsection B. Subsection B of 304, Subsection A, first of all, says in the event of a restatement of financials, the CEO and CFO shall reimburse the issuer, the company, for certain compensation to which they've received. But Subsection B says commission exemption authority. The commission may exempt any person from the application of Subsection A of this section as it deems necessary and appropriate. So I think even Subsection B is making the clear implication that the SEC, the commission, is the regulatory authority with respect to this Section 304. Why would Congress put the state that Congress, that the SEC can exempt parties if the SEC has full control over prosecution? That's prosecutorial privilege. We don't put into the U.S. Code that the U.S. attorney may decide not to prosecute. I think there was an attempt to make a difference between an exemption and a decision whether or not to prosecute because Subsection A has mandatory language, shall reimburse the issuer. The exemption means that the SEC has found that you are likely guilty, but it is going to exempt you under these circumstances. Well, I think Subsection A says shall reimburse the issuer. Clearly, the commission has to make a decision whether or not to effect that. But I think Congress wanted to make it more clear that the commission did have specific authority to create regulations that would permit exemptions in appropriate cases. But does the commission have the power to enact regulations to govern 304? I believe it does, but I don't know. Would it enact regulations that would govern exemption? I believe that it could, but I do not believe that it has enacted any regulations specifically delineating how it will enforce 304. Counsel, I hope that you will save some time because I would like to talk about the diversity question. So I see what your argument, but at some point I would like to talk about diversity. Yes, Your Honor. And I will proceed to that right now. My only final point on Section 304 is that the Neer Court also did a good, thorough analysis of the legislative history, which also supports the fact that Congress never considered creating a private cause of action. And the House report, for example, which is quoted in Neer, talks about a discussion of whether or not to give the SEC specific authority, but there was never any discussion of creating a private cause of action. So I think, again, there's nothing in the statute's language itself or the history in the enactment of the statute that would lead one to think that this Court should create a right for an issuer or a derivative shareholder on behalf of the issuer to sue under Section 304. No reported circuit cases on this issue? Yes, Your Honor. The Pirelli-Armstrong tire case from August 8th of this year is the first one. Other than Pirelli? No, that is the first one. Okay. Turning to the diversity issue, when the plaintiffs brought this case, this case in federal court, they were a New York, I believe, individual shareholder. And some of the directors, my clients, are from Oregon. Digimarc was sued as a nominal defendant, as is typically done in derivative cases, and it is an Oregon corporation. However, the general rule as established in the Coster, United States Supreme Court case of Coster, is that in derivative actions for diversity purposes, the Because, of course, the derivative plaintiff is suing in the name of the company, asserting that the company has a claim against my clients that the company is not bringing but should bring. And that's the general rule. And when you realign Digimarc as a plaintiff, of course, then it is an Oregon resident, and my clients are Oregon residents, and therefore there is no diversity. And that's why most of these derivative actions are state court actions. And, in fact, other than the 304 claim, all of the causes of action in this case are state court causes of action under either Oregon or California law. There is an exception to that realignment for what is known as or identified as active antagonism. And I think if you look at the district court opinion by Judge Hagerty, he looked to see whether, in fact, there was indicia that Digimarc was actively antagonistic or opposed to these lawsuits. Justice Alito, ordinarily, we measure subject matter, jurisdiction, questions of diversity as of the day of the filing of the lawsuit. Yes, sir. Now, is that true in this case as well? That is true, and there is some case law on that, and Judge Hagerty did We don't get to look at all the subsequent developments here involving the Special Well, but the Special Litigation Committee had been created prior to this lawsuit being filed. And so I think that was something Judge Hagerty pointed to, is that in response to the other shareholder, the Beasley shareholders, making a demand on the case, on the company, and as a result of this shareholder filing his action in California, the company created I want to make sure I'm clear on this. The SLC was created before the suit was filed in federal court? Yes. Okay. But it was filed in response to the state court actions that were filed in California. You had three actions, Sheehan, Diaz, and Beasley. Well, Beasley was filed in Oregon. I'm sorry, it was Oregon. So in response to the Sheehan and Diaz actions in California, the SLC was formed. Yes. In response to the Diaz and Sheehan actions in California and the Beasley demand letter, the SLC was formed, and Mr. Beasley was invited to participate in that process. That all occurred prior to this federal case being filed. And the district court looked to that, and then the district court also considered the fact, although it acknowledged it was after this action being filed, that these plaintiffs, Sheehan and Diaz, were also invited by the Special Litigation Committee to participate in their process And let me say, Your Honor, the Special Litigation Committee was comprised of three new independent board members who were brought onto the DigiMark board after the SLC was created. They were substituted in. They had separate counsel, and as we have submitted in my declaration, which the court granted my request for judicial notice is now in the record, the Special Litigation Committee ultimately produced a 80-some page report comprehensively evaluating the derivative plaintiffs' claims and concluding that they were not in the best interest of the company. Although the formation of a Special Litigation Committee shows that the DigiMark board recognized it wasn't disinterested, because obviously the board is saying that these derivative claims are against us, we are therefore not disinterested. However, the company needs to evaluate these claims, so we're going to create an independent committee of new directors who aren't defendants. And this Special Litigation Committee then set up, with its own counsel, a thorough investigation, as I've described, and that is not active antagonism. I think the company was very open-minded about what it is the various derivative plaintiffs were alleging, whether it was really in the best interest of the company to pursue those claims or not. And so I don't believe that the plaintiffs have met this active antagonism test, and that's why the district court realigned the company and dismissed the action for lack of subject matter jurisdiction. That's all I have. Thank you. Thank you. Rebuttal? Yes, I apologize for not having that important quote right at hand. It is Harper at 1176. It states, Because the conference report represents the final statement of the terms agreed to by both houses, next to the statute itself, it is the most persuasive evidence of congressional intent. That's boilerplate language. What conference report do you have that indicates there's a private right of action here? None. But what Neeraj relied upon was the conference report, which had taken out and found that there was intent to have the SEC have sole enforcement. Second of all, I think the Neeraj court and defendants also rely on the fact that there's no statement, as Justice Bybee just said, saying that we want private right of action. But that's not required. That's not required. And as this court held in the First Pacific, if you were to find that silence means no implied private right of action, then there would never, ever be anything called an implied private right of action. So as to the third factor, I think it's worth quickly noting that under the Federation case, which the two issues which should be looked at are the purpose, and I think that 304 is symbiotic with the purpose, and the availability of other enforcement mechanisms. Here the issuer has no other enforcement mechanism to get this specific relief back. But the SEC does. The SEC stated during its congressional testimony that it has this power. And, in fact, 305, which was passed right next to 304, specifically states that the court, any court, federal courts can give the SEC any equitable remedy. So they have this power. And if the court reads that the SEC only can enforce 304, it makes these remedy provisions redundant. The issue was quickly raised about the 304B exemption. I think that not only – Counsel, has the SEC participated in any of these lawsuits? I don't – Has the SEC ever weighed in on the question as to whether there's a private right of action? Well, I actually had a sit-down with the SEC, but I don't know if the terms of that should be disclosed. But specifically, the SEC has – The answer to the question is, as far as you know, then, the SEC has not made a public filing. No, that's not true. We have actually submitted to the court, as supplemental authority, that and the D.C. Circuit opinion. Two negative things, and I wish we would have submitted the one opinion that we think helps us. But they have actually sought 304 as a remedy against – I think it's maybe five or six cases now. The SEC has. The SEC has. No, my question to you is very specific. Has the SEC taken a position as to whether 304 creates a private – They have not. They have not. They have not. And you did not submit – For 28J, you did not submit Judge Hellerstein's opinion to us. What I did is I footnoted it in the reply, and I said if the court wants it, we're willing to make the official transcript available. Okay. Is it a published opinion? Is it available on Westlaw?  I don't – It's not a published opinion. It was an order. It was an order. Okay. So there's no published record of his – of an opinion. He didn't issue a written opinion. He just said – I think it was a one-line order, and we were willing to provide the transcript. Okay. I guess real quickly, the fourth factor, the court has questioned the continued utility, but these corporate disclosure type issues are and do belong in federal court. And to wrap it up, I think that when you look at the statute as a whole, what you'll find is that all that was done in the The limitation in 303, the limitation in 306, as well as the limitation in 804. So within the old mandate, when Congress knew how to limit, it did so. Okay. Thank you. Thank you. Thank both sides for their argument. The case just argued will be submitted for decision. And we'll proceed to the next and last case on the argument.
judges: Nelson, Hawkins, Bybee